# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

DEANGELIA LITTLEJOHN AS                CIVIL ACTION
NATURAL PARENT OF DECEASED MINOR,
CHIMELU KABAZZ

                                          NO: 20-cv-00888

                                          SECTION: " I  "

                                          MAGISTRATE: 3

VERSUS

THE CITY OF NEW ORLEANS, MAYOR
LATOYA CANTRELL,( in her official capacity as Mayor for the City of New Orleans)
POLICE CHIEF,SHAUN FERGUSON, (in his official capacity, as Superintendent of the
New Orleans Police Department), NEW ORLEANS POLICE DEPARTMENT, POLICE
OFFICER #1, Alex Mikkelsen (individually and in his official capacity
as an officer  for the New Police Department), POLICE OFFICER #2, Jonathan Broom
(individually and in his  official capacity as an officer for the New Police Department),
POLICE OFFICER #3, Jeffrey Harrington  (individually and in his official capacity as an
officer for the New Police Department), POLICE OFFICER #4, Alex Florian
(individually and in his official capacity as an officer for the New Police Department),
POLICE OFFICER #5, William Hery (individually and in his official capacity as an
officer for the New Police Department), and POLICE OFFICER #6, Colby Stewart
(individually and in his official capacity as an officer for the New Police Department),
XYZ INSURANCE COMPANY

FILED:_____              _____

                                           DEPUTY CLERK

## AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, come plaintiff Deangelia Littlejohn,

who is of the full age of majority and domiciled in the Parish of Orleans, State of Louisiana

and the mother of Chimelu Kabazz decease minor child, who respectfully represents that:

## JURISDICTION

1

1.      Jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. 1331, and 1343.  This is an action authorized by Title 42 U.S.C., section 1983, to redress the deprivation under color of law, statute, ordinance, regulation, custom and/or usage of rights guaranteed the plaintiffs by the Fourth and Fourteenth Amendments to the United States Constitution.

2.      This Honorable Court's supplemental jurisdiction is also invoked, pursuant to 28 U.S.C. 1367, as to all matters cognizable under Article 1(inalienable rights) and 2 (due process) of the Louisiana Constitution of 1974 and dialectal laws of the State of Louisiana, including Article 2315 of the Louisiana Civil Code.

## PARTIES

3.      Plaintiff, Deangelia Littlejohn, mother of **Chimelu Kabazz,** a deceased minor child; domiciled in the Parish of Orleans, State of Louisiana.

4.      **THE CITY OF NEW ORLEANS, LOUISIANA,** is a municipality organized under the laws of the State of Louisiana with capacity to sue and be sued.

5.      **THE HONORABLE LATOYA CANTRELL**, is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was the duly elected Mayor of the City of New Orleans.

6.      **CHIEF OF POLICE SHAUN FERGUSON,** in his official capacity is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was the Chief of New Orleans Police Department.

7.      **OFFICER ALEX MIKKELSEN**, is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was a Police Officer

2

with the New Orleans Police Department who is sued in his individually and official capacity.

8.      **OFFICER JONATHAN BROOM**, is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was a Police Officer with the New Orleans Police Department who is sued in his individually and official capacity.

9.      **OFFICER JEFFREY HARRINGTON**, is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was a Police Officer with the New Orleans Police Department who is sued in his individually and official capacity.

10.     **OFFICER ALEX FLORIAN**, is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was an Police Officer with the New Orleans Police Department who is sued in his individually and official capacity.

11.     **OFFICER WILLIAM HERY**, is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was a Police Officer with the New Orleans Police Department who is sued in his individually and official capacity.

12.     **OFFICER COLBY STEWART,** is a person of the full age of majority and resident of the Parish of Orleans, State of Louisiana, who at all times pertinent herein was a Police Officer with the New Orleans Police Department who is sued in his individually and official capacity.

## FACTS AND CAUSES OF ACTION

13.   On or about **March 20, 2019**, Mr. Bryan Wilson, Jr., was the driver of a vehicle, in which

Chimelu Kabazz was a  restrained front seat passenger, traveling in New Orleans, Louisiana,

in the Parish of Orleans, State of Louisiana.  At the time of the incident, Chimelu Kabazz

was fourteen years of age.  At the same time, (New Orleans Police Department, (hereinafter

referred to as "NOPD") Officers, Alex Mikkelsen, Jonathan Broom, Jeffrey Harrington, and

Alex Florian, perceived the car Kabazz was a passenger in to be stolen, they initiated a high

speed chase to secure the alleged stolen vehicle even though the officers were not pressured

to make a decision to pursue the vehicle and nor were they required to act promptly.  There

was no urgent need to engage the driver in a high speed chase.

14.   The high speed chase not only included one vehicle but three police cars and a total of six

officers who sought to recover property while speeding at 80 miles per hour in a 35 mile per

hour zone, in their pursuit of an underage driver and passenger, causing a state created

danger because they knew of the risk that the pursuit could cause Kabazz's death, it was a

foreseeable risk to a vehicle passenger and they consciously disregarded that risk in violation

of the Constitution.

15.   However, the NOPD has a pursuit policy that prohibits its officers for engaging in pursuit of

a fleeing suspect where there is no reasonable suspicion that the suspect committed a crime

of violence or that a subject posed an imminent danger of death or serious bodily harm to the

officer or another person.  This policy is designed to minimize the risk of its officers creating

danger and death but is routinely ignored by its officers. The NOPD policy makers were

aware but turned a blind eye.

16.   The NOPD pursuit policy prohibits pursuits for property offenses such as a stolen car and

4

provides that vehicle pursuits should only occur if it involves a **crime of violence**.  It further requires the officers seek supervisory approval before initiating pursuit.  The officers named in this cause failed to obtain approval to engage in the high speed chase from their supervisor, in direct violation of NOPD pursuit policy.  Because the officers violated the department's facially innocuous policy by initiating pursuit with no reasonable suspicion that Kabazz (the passenger) committed a crime of violence, and nor did Kabazz present a risk of imminent danger to the officers, as stated above, they failed to seek to the approval of their supervisor before initiating pursuit.

17.   The officers with the intent to cause harm and death initiated the pursuit of the vehicle that Kabazz was riding in, struck a tree and building, dying a violent death  in a blaze of fire  with the fear emblazoned on his charred corpse, shocking the conscience of the community including NOPD Police Chief Ferguson.

18.   In addition to violating the pursuit policy, these officers hid their actions when they intentionally turned off their body worn cameras, "BWC".  The act of disengaging the BWC and the vehicle camera is indicative of their intent to harm and cover up evidence of unconstitutional conduct hiding the truth about the state created danger they caused in violation of the constitution.  These Officers intentionally precluded the recording of unbiased actions-video evidence of the incident precluding the capture of metadata and evidence of their intentional acts to pursue the vehicle containing Kabazz, purposefully causing Kabazz's death by inferno in an attempt to hide the shocking nature of their actions.

19.   The BWC policy expressly provides that the officers were required to use them when they were engaged in vehicle pursuit. Consequently, the failure to activate the BWC was intentionally done to hide the Officers purposeful unlawful pursuit of the vehicle Kabazz sat

in with knowledge and intent that their illegal pursuit would result in his death because they were deliberately indifferent to his constitutional right to life.

20. The misuse of power the officers possessed by virtue of state law was made possible only because they were clothed with the authority of state law is action taken '*under of color of law'*. The arbitrary action of initiating a vehicle pursuit for the purpose of securing property where there was no "highly pressurized" reason to do so shocks the conscience, initiated a state created danger and violated Kabazz's substantive due process rights killing him in a blaze of fire that remains emblazoned on the face of his charred corpse .

### City of New Orleans-Monell Claim

21. In additional to the officers purposeful violation of Kabazz's constitutional rights, the **City of New Orleans,** should also be held liable because  although it had a innocuous policy to hold up and say they did the right thing, they actually had an informal policy, practice or custom regarding vehicle pursuits  which was routinely ignored by the Chief of Police and other Executive Leadership of the department and because the officers were aware of the actual policy and that the leadership ignore non-violent vehicle pursuits, it made it more likely than not that their informal policy would result in harm to a member of the public such as 15 year old Kabazz.

22. Chief Ferguson and Mayor Cantrell are both policy makers who were delegated the authority to enforce its policies but instead there was a persistent practice of the city officials and employees which although not authorized by official policy, adopted or promulgated routinely initiated high speed chases to recover stolen property causing a danger to the public and Kabazz.

23. Additionally, the officers routinely violate the BWC policy and purposefully turn off their

6

department issued recording devices.

24.     The officers decision to ignore the **pursuit policy** and pursue vehicles which are property crimes and purposefully turn of their  BW equipment is the result of  Chief Ferguson and his executive leaderships' failure to have an adequate training program to instruct its officers about the constitutional limits of their authority when initiating vehicle pursuits to recover property.

25.     Further, the municipality's inadequate training program failed to instruct, train and disciplined officers who knowingly and purposefully violated the department's **BWC** policy allowing them to hide evidence of their conduct which implicitly or explicitly gave permission to the officers to continue their misdeeds also creating a state danger that they would pursue with impunity under the belief that their superiors would not be able to review their actions because they were unrecorded enhancing the foreseeability that vehicle property pursuit would end in the death of a citizen they swore to protect such as Kabazz

26.     Because these errant officials did not suffer true discipline either through being discharged or properly reprimanded despite repeated constitutional violations, the municipality by allowing officers to quietly resign thereby tacitly permitted them to be free for hire by other law enforcement agencies or rehire them by NOPD, granting them permission to continue their illegal and unconstitutional property pursuits while hiding evidence.

27.     The City of New Orleans permitted repeated constitutional violations of the pursuit policy as demonstrated by its own public history.  For example, the following incidents show that the City and its officers routinely violated their facially innocuous pursuit policy:

        (1) On Jan 13, 2017 Kenneth Lewis and Deshoun Lowery were in a white Lincoln MKX SUV which matched the description of a stolen vehicle.  They fled and the officers pursued.

7

(2)  October 4, 2016 a fifteen year old male juvenile was spotted driving a green Toyota Corolla and the officers began a vehicle pursuit and the vehicle crashed and the suspect ran with the incident ending in a foot chase and was caught.

(3.) On July 22, 2019 Roman Coates along with two male juveniles were chased in what was believed to be a stolen car.  Again, the department engaged in conduct in violation of its policies and procedures regarding high speed chase of stolen property.

(4.) On October 3, 2014 Tavion Aples was driving a stolen vehicle two days earlier. In the course of the pursuit he struck another vehicle and lost control and struck a cement light pole.

Each of these instances demonstrate that the municipality has an informal policy of pursing vehicles it believes were stolen without regard to its own facial neutral policy and without regard to the significant risk of injury to the public and/or vehicle occupants.  This custom of pursuing in high speed chases is the moving force behind the injury and fiery death of Kabazz, the result of a state created danger for whom the department and its officers had a duty to protect and serve as he was merely a passenger in a vehicle.

28.    After Kabazz was killed in a fiery inferno, Chief Ferguson, publically acknowledged that his officers violated the policy.  In contrast, the evidence indicates that the real policy is to pursue vehicles suspected of being stolen as the prior instances detail, Chief Ferguson knew about these instances as they available the department's website.

29.    However, Ferguson and Mayor Cantrell, both policy makers, along with other departmental policy-makers  knew that its officers would confront a person in a stolen vehicle,  they knew that their officers had a history of pursuing vehicles even when there was no crime of violence suspected, they knew that a wrong decision to pursue by its officers could result in the deprivation of a citizen's life and yet, they looked past those prior violations and *de facto* created an opportunity for danger that otherwise would not have existed allowing their

8

officers to misuse their authority.  Ferguson's decision was wilful such that the harm Kabazz ultimately suffered a horrible death at the hands of the department's officers which was foreseeable and fairly direct because he knew of earlier pursuit policy violations at high speeds of up to 80 miles per hour in densely populated areas of the city, failed to create an adequate training program and failed to re-train officers who displayed either a disregard for the policy or lack of understanding for the constitutional limits of their authority.

30.    The actual policy and practice, a misuse of state authority, is to pursue stolen vehicles even if no crime of violence is suspected.  These additional instances of past transgressions where NOPD officers ignored the departments own policy illustrates the failure of the department's training program because officers clearly do what they want, how they want and when they want without fear of any repercussions causing a risk of danger and destruction to the public, including Kabazz.

31.    Consequently the policy makers as a result of their failure to enforce compliance with the City of New Orleans own police department polices permitted the creation of a different renegade policy of pursuing people for property crimes and was deliberate indifference to the risk of injury and fiery death of Kabazz, all in violation of his constitutional rights provided by both federal and state law.

32.    The City of New Orleans should therefore be held liable pursuant to *Monell*.

33.    The prior transgressions were clearly known by Chief Ferguson, Mayor Cantrell, and task force supervisors responsible for the creation, conduct and training of the defendant officers and their failure to do so was a moving force in the cause of Kabazz fiery death through the unofficial custom of pursuing non-violent suspects to retrieve perceived stolen property. Consequently, the pursuit death of Kabazz was clearly foreseeable and a 'fairly direct' result

of the officers initiating high speed chases for the retrieval of stolen vehicles, not the result of any violent act.

## DAMAGES

34.   As a direct and proximate result of the acts and omissions of the City of New Orleans, the New Orleans Police Department and their employees, plaintiff, Deangelia Littlejohn is entitled to damages for violations of section 1983 and state law and the following:

    A.    Compensatory damages

    B.    Mental and emotional pain and suffering, including humiliation, aggravation, anxiety, inconvenience, fear, fright and intimidation;

    C.    Deprivation of rights, privileges, and immunities secured to plaintiff and all citizens;

    D.    Loss of consortium, society, and affection;

    E.    Prejudgment interest

34.   Plaintiff Deangelia Littlejohn, the mother of Chimelu Kabazz, is now suffering and will continue to suffer irreparable harm from the defendants' policies, practices, procedures and customs as mentioned heretofore.  The conduct of the City of New Orleans, the New Orleans Police Department and their employees deprived the plaintiff of constitutional rights under the law and constituted deliberate indifference toward their safety and welfare.

**WHEREFORE**,  plaintiff, Deangelia Littlejohn, the mother of decedent, Chimelu Kabazz pray that after due proceedings had, there be judgment rendered herein in her favor and against defendants, defendant Mayor Latoya Cantrell, Police Chief Shaun Ferguson, the New Orleans Police Department, Officers Alex Mikkelsen, Jonathan Broom, Jeffrey Harrington,

Alex Florian, William Hery, Colby Stewart, (all individually and in his/her official capacity as an officer for the New Police Department) and the City of New Orleans, damages as this court may deem just and appropriate.

**FURTHER,** Plaintiff prays for all costs and expenses incurred in this litigation, and reasonable attorney's fees pursuant to Title 42 U.S.C. 1988.

**FURTHER,** plaintiff prays for and demands trial by jury as to all issue.

Respectfully Submitted,

**/s/ Clarence Roby, Jr., ESQ.**            **/s/ TONY DOOLEY, ESQ**
**CLARENCE ROBY, JR., LSBA(20345)**       **TONY DOOLEY, LSBA(28557)**
3701 Canal Street, Suite U                3701 Canal Street, Suite U
New Orleans, Louisiana 70119              New Orleans, Louisiana 70119
Phone: (504) 486-7700                     Phone: 504-510-0286
Fax: (504) 486-8005                       Fax: 504-486-8005
Email: croby@crobylawfirm.com             Email: tdooley@thedooleylawoffice.com