**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DEANGELIA LITTLEJOHN**                                    CIVIL ACTION

**VERSUS**                                                              No. 20-888

**NEW ORLEANS CITY, ET AL.**                              SECTION I

## ORDER AND REASONS

New Orleans police were involved in a high speed chase that ended in a crash and the tragic death of three individuals, two of whom perished inside the fleeing vehicle.[1] Deangelia Littlejohn ("Littlejohn") brings this action individually and on behalf of C.K.,[2] one of the decedents. The remaining defendants (collectively, the "defendants") in the suit are the City of New Orleans (the "City"), the New Orleans Police Department ("NOPD"), Jeffrey Harrington ("Harrington"), Alex Florian ("Florian"), William Hery ("Hery"), and Colby Stewart ("Stewart")— (collectively, the "officers") all NOPD officers sued in their official and individual capacities[3]—as well as NOPD Superintendent Shaun Ferguson ("Superintendent Ferguson") and New Orleans Mayor LaToya Cantrell ("Mayor Cantrell") in their official capacities. Littlejohn asserts federal claims pursuant to 42 U.S.C. § 1983 and claims under Louisiana law.[4]

---

[1] R. Doc. No. 33.
[2] While the complaint referred to C.K. by name, the Court is using an abbreviation.
[3] Other officers were previously dismissed from the suit. *See* R. Doc. No. 24.
[4] R. Doc. No. 33.

Each of the above named defendants has moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]   They all contend that Littlejohn failed to state a claim of any constitutional violation or point to a policy, practice, or custom that caused constitutional violations.[6]   The officers also argue that the Court should dismiss the claims against them in their individual capacity because they are entitled to qualified immunity.[7]   Finally, all defendants ask that the Court decline to exercise supplemental jurisdiction over Littlejohn's state law claims.[8]   For the following reasons, the motions are granted.

## I.

According to the amended complaint, on March 20, 2019, fourteen-year-old C.K. was a passenger in a vehicle driven by another minor, B.W.[9]   The pair were traveling in New Orleans when four NOPD officers, suspecting that the vehicle was stolen, attempted to stop the vehicle.[10]   B.W. did not stop, and a high speed chase ensued.[11]   Eventually, two additional officers joined the pursuit.[12]   During the chase, patrol cars, attempting to apprehend the vehicle, reached speeds of nearly 80 miles

---

[5] R. Doc. No. 36 (Hery and Stewart); R. Doc. No. 37 (Mayor Cantrell, Superintendent Ferguson, the City, and the NOPD); R. Doc. No. 38 (Florian and Harrington).
[6] R. Doc. No. 36-1, at 5–7; R. Doc. No. 37-1, at 6–11; R. Doc. No. 38-1, at 5–10.
[7] R. Doc. No. 36-1, at 5–7; R. Doc. No. 38-1, at 10–11.
[8] R. Doc. No. 36-1, at 7; R. Doc. No. 37-1, at 12; R. Doc. No. 38-1, at 12.
[9] R. Doc. No. 33, at 4 ¶ 13.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 4 ¶ 14.

per hour in a 35 mile per hour zone.[13]  Eventually, the car driven by B.W. crashed into a building.[14]  The fiery collision killed C.K.[15]

Under NOPD policy, officers should engage in vehicle pursuits only where there is "reasonable suspicion that the suspect committed a crime of violence or . . . posed an imminent danger of death or serious bodily harm to [officers] or another person."[16]  NOPD officers violated this internal policy when they engaged in the pursuit because they had no reasonable suspicion that the minors had committed a violent crime or posed a risk of imminent harm.[17]  NOPD policy also "requires [that] officers seek supervisory approval before initiating pursuit."[18]  The officers made no such request.[19]  Additionally, every officer deactivated his body camera during the chase; this also violates internal policy.[20]

Plaintiff argues that this improper pursuit fits a troubling pattern for the NOPD.[21]  She points to four separate instances where NOPD officers engaged in high speed pursuits prompted by property crimes.[22]  Littlejohn contends that these improper pursuits are sanctioned by NOPD and evidence an informal "custom"

---

[13] *Id.*
[14] *Id.* at 5 ¶ 17.
[15] *Id.*
[16] *Id.* at 4 ¶¶ 15–16.
[17] *Id.* at 4–5 ¶ 16.
[18] *Id.* at 5 ¶ 16.
[19] *Id.*
[20] *Id.* at 5 ¶¶ 18–19.
[21] *Id.* at 7–8 ¶ 27.
[22] *Id.*

promulgated by NOPD and New Orleans officials.[23]  This custom, she alleges, was "the moving force" behind the death of her son.[24]

## II.

### A. Rule 12(b)(6) Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and cannot survive a motion to dismiss.  *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

In assessing the complaint, a court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most

---

[23] *Id.*
[24] *Id.*

4

favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). On a Rule 12(b)(6) motion to dismiss, "the factual information to which the court addresses its inquiry is limited to the (1) the [sic] facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."[25] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

"Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (alteration in original) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). Where applicable, qualified immunity can operate as one such bar. *See Turner v. Lieutenant Driver*, 848 F.3d 678, 696 (5th Cir. 2017).

### B. Qualified Immunity

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate

---

[25] Rule 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

Where a public official invokes qualified immunity as a defense to a civil action against him, a plaintiff has the burden of establishing a constitutional violation and overcoming the defense. *See Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curium) (en banc)). To meet this burden, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *al-Kidd*, 563 U.S. at 735). The Court has discretion to decide which of the two prongs of the qualified immunity analysis to examine first. *See Jackson*, 959 F.3d at 200.

At the 12(b)(6) stage, to find that a defendant violated the law at step one of the qualified immunity analysis is to say that, taking the facts in the light most favorable to the plaintiff, the plaintiff has stated a claim upon which relief may be granted—that is, that the alleged conduct violated a constitutional right. *See Morgan*, 659 F.3d at 384.

As to the second step, for "a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right.'" *Turner*, 848 F.3d at 685  (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *al-Kidd*, 563 U.S. at 741).  Once a plaintiff alleges that an official's conduct violated a clearly established right, the court must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident."  *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005).

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights."  *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015); *see also Thompson v. Upshur Cty.*, 245 F.3d 447, 460–63 (5th Cir. 2001) (holding that multiple officers' actions were objectively reasonable because, among other reasons, not all reasonable officers would recognize the unconstitutionality of their actions).  When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."  *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (quoting *Morgan*, 659 F.3d at 371–72).  Precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.

When the defense of qualified immunity is raised in a motion filed pursuant to Rule 12(b)(6), "it is the defendant's conduct *as alleged in the complaint* that is

scrutinized for 'objective legal reasonableness.'"   *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).  A court evaluating such a challenge must determine that the plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity."  *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (quoting *Wicks v. Miss. State Empl. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)).  A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."  *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

## C. Section 1983

"Section 1983 provides a private right of action against parties acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to redress the deprivation of rights secured by the United States Constitution or federal law."  *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (quoting City of *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'"

*Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *James v. Tex. Collin Cty.,* 535 F.3d 365, 373 (5th Cir. 2008).

Additionally, while municipalities may be liable under § 1983, under *Monell v. Dep't of Soc. Servs*, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see* 436 U.S. 658, 690–91 (1978). Accordingly, a plaintiff must establish "that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

## III.

As a preliminary matter, the claims against the NOPD must be dismissed because it "is not recognized as a legal entity or person capable of being sued." *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 691 (E.D. La. 2012) (Feldman, J.); *see, e.g.*, *Banks v. United States*, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007) (Beer, J.) (explaining that Louisiana law governs whether the NOPD is an entity that can be sued, pursuant to Fed. R. Civ. P. 17(b), and that under Louisiana law, the NOPD is not a "suable entity").

As to the remaining defendants, Littlejohn brings this action to recover damages for the "conduct" of the officers, which she alleges "deprived" her son of

9

"constitutional rights under the law."[26]  Specifically, she claims a violation of Fourth Amendment protection from unlawful seizure and a denial of Fourteenth Amendment due process under 42 U.S.C. § 1983;[27] violations of the right to due process and the right to be free from unlawful seizure and excessive force under the Louisiana Constitution;[28] delictual liability under La. Civ. Code art. 2315;[29] and municipal liability under 42 U.S.C. § 1983 and *Monell*.[30]

## A. Constitutional Claims

Plaintiff's federal claims, which arise under 42 U.S.C. § 1983, allege that the NOPD officers' pursuit of B.W. and C.K. constituted an illegal seizure and denial of due process in violation of the Fourth and Fourteenth Amendments.[31]  Littlejohn argues that the officers improperly pursued the fleeing vehicle in violation of NOPD policy and deactivated their cameras "with knowledge and intent that their illegal pursuit would result in his death[.]"[32]

Although defendants do not dispute that this pursuit was in violation of NOPD policies, they argue that plaintiff's §1983 claims must be dismissed because plaintiff

---

[26] R. Doc. No. 33, at 10 ¶ 34.
[27] *Id.* at 2 ¶ 1.
[28] *Id.* at 2 ¶ 2.
[29] *Id.*
[30] *Id.* at 9 ¶ 32.
[31] R. Doc. No. 39, at 2, 4 (plaintiff's opposition to the City's motion); *see also* R. Doc. No. 40 (opposing Stewart and Hery's motion).  The Court will consider plaintiff's opposition to the motions, though it was not timely submitted.  *See id.*
[32] R. Doc. No. 33, at 5 ¶ 19.

failed to assert any constitutional violations.[33]  Additionally, the officers claim that they are entitled to qualified immunity.[34]

### i. Fourth Amendment Seizure

The Fourth Amendment protects the right to be secure from unreasonable seizure.  U.S. CONST. amend. IV.  A person is seized by the police and therefore entitled to challenge the government's action under the Fourth Amendment when the officer, "by means of physical force or show of authority [] terminates or restrains his freedom of movement [] *through means intentionally applied*."  *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis in original) (internal citations and quotation marks omitted).  "Physical force is not required to effect a seizure; however, absent physical force, '*submission* to the assertion of authority'" is necessary.  *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (emphasis in original) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).  A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [he was] not free to leave."  *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

Littlejohn argues that the NOPD officers' high-speed pursuit was an unconstitutional seizure that violated the Fourth Amendment.[35]  She asserts that her son was unable to leave the vehicle during the chase, and so was improperly "seized,"

---

[33] R. Doc. No. 36-1, at 5; R. Doc. No. 37-1, at 4; R. Doc. No. 38-1, at 5.
[34] R. Doc. No. 36-1, at 10–11; R. Doc. No. 38-1, at 5–7.
[35] R. Doc. No. 39, at 5–7.

before the fatal crash.[36]   However, in *Brower v. Cty. of Inyo*, the United States Supreme Court considered a hypothetical "police chase in which the suspect unexpectedly loses control of his car and crashes." 489 U.S. 593, 595 (1989).   The Court reasoned that:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Id.* at 596–97.   A suspect's accidental crash during a police pursuit would not constitute a seizure under the Fourth Amendment, the Court continued, because "[t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash." *Id.* at 597.   That is exactly what happened here.

The NOPD officers made the initial decision to stop B.W.'s car because they suspected the vehicle was stolen property.[37]   Only when B.W. failed to stop did the officers initiate a pursuit.[38]   Consequently, it is evident that the officers desired that B.W. terminate the car's movement.   But there are no facts that show the officers *intentionally* stopped the vehicle.   *See Brower*, 489 U.S. at 596–97.   Littlejohn does not (and cannot) contend that the building and tree, which terminated the chase,

---

[36] *Id.* at 6.
[37] R. Doc. No. 33, at 4 ¶ 13.
[38] *See id.*

were forces intentionally applied. *See id.* Therefore, as in the hypothetical described in *Brower*, it was B.W.'s loss of control and subsequent crash that stopped the car's movement. *See id.* at 595.

Although plaintiff alleges that the officers pursued the vehicle knowing that doing so posed a risk to the public and the vehicle's occupants,[39] her amended complaint does not allege that the officers controlled the car's movement. Instead, Littlejohn states that the pursuit ceased when B.W.'s vehicle "struck a tree and building[.]"[40] Consequently, the car was "stopped by a different means" than the pursuit itself. *See Brower*, 489 U.S. at 597; *see also Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) (finding that no seizure occurred where the "termination of [plaintiff's] freedom of movement" was not accomplished "through means intentionally applied"). And Littlejohn's allegations of intent are conclusory and therefore not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (noting that conclusory allegations are not entitled to the presumption of truth otherwise afforded at the motion to dismiss stage).

Littlejohn argues that C.K.'s position as the vehicle's passenger, rather than the driver, should influence this analysis.[41] Specifically, she argues that C.K., as a passenger, "had no role in the decision to flee or be pursued[.]"[42] Assuming, as we must, that this is true, the police did not intentionally stop C.K. any more than they

---

[39] R. Doc. No. 33, at 4 ¶ 14.

[40] *Id.* at 5 ¶ 17.

[41] R. Doc. No. 39, at 7.

[42] *Id.*

intentionally stopped B.W.  That C.K.'s 'flight' was not his choice but B.W.'s is tragic, but it does not change the legal analysis.  The pursuing officers violated neither occupants' Fourth Amendment right to freedom from unreasonable seizure.  *See Brower*, 489 U.S. at 599; *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[A] police pursuit in *attempting* to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment") (emphasis added) (citing *Hodari D.*, 499 U.S. at 626).

The Court finds that plaintiff has failed to plausibly allege a violation of the Fourth Amendment protection against unreasonable seizure.  Accordingly, the claim against the City based on same must be dismissed.  *See Baughman v. Hickman*, 935 F.3d 302, 311 (5th Cir. 2019) ("[A]n underlying constitutional violation is required to impose liability on the governmental body[.]"); *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Without an underlying constitutional violation, an essential element of municipal liability is missing.").

In addition, the relevant § 1983 claim against the NOPD officers in their official capacities must be dismissed because official capacities claims are treated as claims against the municipality.  *See Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279–80 (5th Cir. 2015); *Goodman v. Harris Cty.*, 571 F.3d 388, 396 (5th Cir. 2009) ("[O]fficial capacity suits are really suits against the governmental entity[.]"); *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) ("In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued . . . [t]he official-capacity claims and

the claims against the governmental entity essentially merge."); *see also Whitley*, 726 F.3d at 639 n.3 ("To the extent Whitley asserts claims against Appellees in their official capacities, we find such claims also fail for lack of an underlying constitutional violation.").

Furthermore, because plaintiff has not plausibly alleged a Fourth Amendment claim of an unconstitutional seizure, she also has failed to meet her burden to overcome the officers' defense of qualified immunity. *Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) ("If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to qualified immunity.").[43]

### ii. Fourteenth Amendment Due Process

The Fourteenth Amendment right to due process protects the individual "against arbitrary action of government." *Lewis*, 523 U.S. at 845 (quoting *Wolf v. McDonell*, 418 U.S. 539, 558 (1974)). When faced with a due process challenge, a

---

[43] While the Court finds that plaintiff has failed to overcome the defense of qualified immunity invoked by the officers because she has not plausibly alleged a Fourth Amendment claim of an unconstitutional seizure, the Court notes Fifth Circuit caselaw suggesting that the § 1983 claims against the officers may be dismissed without reaching the qualified immunity issue. *See Goodman*, 571 F.3d at 396 (explaining that because the plaintiff failed to set forth a § 1983 claim, "an analysis of [defendant's] defense of qualified immunity is unnecessary. Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."); *Lytle*, 560 F.3d at 410 ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

court must determine whether the behavior of the governmental officer "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (quoting *Lewis*, 523 U.S. at 847 n.8). The "shock the conscience" standard is satisfied "where the conduct was 'intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference." *Id.* (quoting *Lewis*, 523 U.S. at 849–50).

Central to Littlejohn's Fourteenth Amendment claim is the officers' conduct during the pursuit, which she argues "shock[ed] the conscience of the community."[44] Specifically, plaintiff claims that the NOPD officers pursued the minors with the "intent" to cause harm and death.[45] But aside from conclusory allegations, there are no facts that show the officers intended to harm or kill anyone involved in the pursuit.

While plaintiff notes that the officers pursued B.W. and C.K. against NOPD policy, the "failure to follow official policy, by itself shows, at most, negligence and cannot support a finding of deliberate indifference." *Mason*, 806 F.3d at 279. Further, even if the officers made the *conscious decision* to pursue B.W.'s vehicle against internal policy, plaintiff has not presented any facts that would support a reasonable inference that the officers' intent was to cause harm. *See Lewis*, 523 U.S. at 854 ("[A] purpose to cause harm . . . ought to be needed for due process liability in a pursuit case."). "[H]igh-speed chases with no intent to harm suspects physically or to worsen

---

[44] R. Doc. No. 39, at 7.
[45] *Id.*

their legal plight do not give rise to liability under the Fourteenth Amendment, redressable by an action under § 1983." *Id.* Littlejohn has failed to show, except through conclusory allegations, that the officers' conduct intended to injure C.K. "in some way unjustifiable by any governmental interest."[46] *See Rosales-Mireles*, 138 S. Ct. at 1906. Thus, plaintiff has not set forth any allegations that would support a reasonable inference that the officers' behavior rises to the level of conscience-shocking conduct, required to withstand a motion dismiss.

The Court finds that plaintiff has failed to plausibly allege a violation of the Fourteenth Amendment right to due process. Therefore, this claim against the City and the other NOPD officers in their official capacities must also be dismissed. This claim against all officers in their individual capacities must also be dismissed because, in the absence of a plausibly alleged constitutional violation, plaintiff cannot overcome the defense of qualified immunity.[47]

### B. Municipal Liability

Finally, Littlejohn asserts that municipal liability is available under *Monell* because the City was responsible for the training and discipline of NOPD officers and that, through the NOPD, the City created, instituted, and oversaw the enforcement (or lack thereof) of the policies and procedures that effectuated the violation of C.K.'s

---

[46] As plaintiff notes in her amended complaint, the officers "sought to recover property" which they believed stolen. R. Doc. No. 33, at 4 ¶ 14.

[47] Again, the Court notes the Fifth Circuit's guidance in *Goodman* and *Lytle* suggesting that a court need not examine the qualified immunity question if it finds that the alleged conduct did not violate a constitutional right. *Goodman*, 571 F.3d at 396; *Lytle*, 560 F.3d at 410.

constitutional rights.[48]   Littlejohn also alleges that Superintendent Ferguson and Mayor Cantrell are responsible for the supervision, administration, policies, practices, procedures and customs of the NOPD, as well as for the training and discipline of the officers.[49]

To state a *Monell* claim against a municipality, a plaintiff must plead facts "that plausibly establish: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" *Piotrowski*, 237 F.3d at 578.   Littlejohn claims that Superintendent Ferguson, Mayor Cantrell, the City, and the NOPD failed to train and discipline the officers who pursued B.W.'s vehicle and that "their failure to do so was a moving force in" C.K.'s death.[50]   The amended complaint also claims that this failure to train and discipline allowed officials to conceal evidence and provided the officer with tacit permission to "continue their . . . unconstitutional property pursuits."[51]   But relief under a municipal liability theory cannot be granted solely because a municipality employs tortfeasors.   *See Monell*, 436 U.S. at 691.   Rather, plaintiff must prove that the municipality's "official action or imprimatur" caused an underlying constitutional violation.   *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 578).

Because Littlejohn has failed to plausibly state a Fourth Amendment or Fourteenth Amendment violation, the City, Superintendent Ferguson, and Mayor

---

[48] R. Doc. No. 33, at 7–9 ¶¶ 24–32.
[49] *Id.*
[50] *Id.* at 9 ¶ 33.
[51] *Id.* at 7 ¶ 26.

18

Cantrell cannot be liable under a § 1983 municipal liability theory. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) ("The Supreme Court has explained that a municipality cannot be liable '[i]f a person has suffered no constitutional injury at the hands of the individual police officer.'") (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Romero v. City of Grapevine*, 888 F. 3d 170, 178–79 (5th Cir. 2018) ("In order to confer liability on the City and [the police chief] for deficient supervisory conduct, there must be 'a sufficient causal connection between [the City's] conduct and the constitutional violation.' '[I]t is facially evident that this test cannot be met if there [are] no underlying constitutional violations.'"). Consequently, plaintiff's *Monell* claim against the City, Superintendent Ferguson in his official capacity and Mayor Cantrell in her official capacity must be dismissed.

### C. State Law Claims

The Court has concluded that plaintiff's federal law claims should be dismissed; only her state law claims remain. A district court has "wide discretion" when deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated. *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). However, the general rule in the Fifth Circuit is "to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

A district court may decline to exercise supplemental jurisdiction over a state law claim if:

(1)  the claim raises a novel or complex issue of State law,

(2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)  the district court has dismissed all claims over which it has original jurisdiction, or

(4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In addition to these factors, the Fifth Circuit has instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Id.*

These factors weigh in favor of dismissal of the Louisiana state law claims without prejudice so that plaintiff may assert those claims in Louisiana state court. The Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Moreover, allowing Louisiana courts to rule on Louisiana law "encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Bitte v. EMC Mortgage Corp.*, No. 07-9273, 2009 WL 1950911, at *2 (E.D. La. July 1, 2009) (Africk, J.) (citations omitted) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  "[D]eference in this case with respect to the state law issue[s] promotes the important interest of comity to state courts." *Id.*  Furthermore, the parties will not be unduly prejudiced because the litigation is still in its early stages.

Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

**IV.**

For the foregoing reasons,

**IT IS ORDERED** that the motions to dismiss are **GRANTED**.  All claims asserted against the New Orleans Police Department are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the federal law claims against the City of New Orleans, Shaun Ferguson in his official capacity, LaToya Cantrell in her official capacity, Jeffrey Harrington in his individual and official capacities, Alex Florian in his individual and official capacities, Colby Stewart in his individual and official capacities and William Hery in his individual and official capacities are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the state law claims against the City of New Orleans, Shaun Ferguson, LaToya Cantrell, Jeffrey Harrington, Alex Florian, Colby Stewart and William Hery are **DISMISSED WITHOUT PREJUDICE** to their being timely asserted in state court.

New Orleans, Louisiana, October 8, 2020.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

21